UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SUSAN C. RICH,

              *Plaintiff-Appellant,*

        v.

MONTGOMERY COUNTY, MARYLAND;
WAYNE FRYER, in his individual
capacity and official capacity as
Captain with the Montgomery
County Police Department and
Director of the Animal Services
Division; WAYNE KUSTER; THOMAS
HANE, in their individual capacities
and official capacities as officers of
the Montgomery County Animal
Services Division,

              *Defendants-Appellees.*

No. 03-1507

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Marvin J. Garbis, Senior District Judge.
(CA-01-3679-8-MJG)

Argued: February 26, 2004

Decided: May 10, 2004

Before WIDENER, SHEDD, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Sean Robert Day, College Park, Maryland, for Appellant. Sharon Veronica Burrell, COUNTY ATTORNEY'S OFFICE FOR THE COUNTY OF MONTGOMERY, Rockville, Maryland, for Appellees. **ON BRIEF:** Charles W. Thompson, Jr., County Attorney, Patricia P. Via, Associate County Attorney, COUNTY ATTORNEY'S OFFICE FOR THE COUNTY OF MONTGOMERY, Rockville, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Susan Rich, a resident of Montgomery County, Maryland, filed this action against Montgomery County, Montgomery County Animal Services Division ("ASD") Director Wayne Fryer, ASD Officer Wayne Kuster, and ASD Officer Thomas Hane, alleging that they conspired to violate, and did violate, her constitutional rights by (1) issuing to her and prosecuting civil citations for animal control violations and (2) searching her home. Following discovery, the district court granted summary judgment in favor of the County and the officers. Rich now appeals. Finding no error, we affirm.[1]

---

[1]Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We review a district court's grant of summary judgment de novo, and we view all facts and inferences in a light most favorable to the nonmoving party. *Hill v. Lockheed Martin Logistics Mgt., Inc.*, 354 F.3d 277, 283 (4th Cir. 2004) (en banc).

I

Rich is an animal protection advocate residing on Bluhill Road in Montgomery County. For years, Rich has been publicly critical of the County's enforcement of animal control laws, and she has expressed her views and criticism to the County and its officials on many occasions. The specific events giving rise to this lawsuit began on March 10, 2001, when Rich met with County Police Chief Charles Moose to discuss problems she believed existed in ASD, including Captain Fryer's performance.[2] Captain Fryer and a small group of citizens also attended this meeting, and Captain Fryer appeared to be angered by Rich's criticism. During this meeting, Rich pointed to several addresses where she believed animal control violations were occurring, and she requested that ASD investigate these locations. One of the addresses was on Bluhill Road near Rich's house.[3]

Within a few days of the March 10 meeting, Captain Fryer went to the Bluhill Road address given by Rich to investigate her complaint, and he found her concerns to be valid. Captain Fryer was disturbed about possible animal control violations as well as the condition of the house and yard, and he also noticed a number of other houses on Bluhill Road that were in disrepair and a number of barking dogs in the neighborhood. Based on Rich's complaint and his own observations, Captain Fryer decided to send ASD officers to Bluhill Road to conduct a "neighborhood sweep" to determine how many dogs were unlicensed or kept in unsuitable conditions. Captain Fryer also decided to involve the County Department of Housing ("DOH") in this operation.

Captain Fryer met with his staff and expressed his displeasure with what he had seen on Bluhill Road and also with their response to calls generally. Captain Fryer told the staff that they needed to take the initiative when responding to a call to verify that all dogs that they observe are properly licensed and vaccinated, and he instructed an officer to go to the Bluhill Road address to ensure that the problems

---

[2]Fryer held the rank of Captain in the County Police Department.

[3]Although a follow-up meeting was scheduled with Chief Moose for May 15, that meeting was never held.

he had observed were fixed. Captain Fryer also informed the staff of his plan to begin conducting neighborhood sweeps. Captain Fryer directed Officers Kuster and Hane to conduct the sweeps, and he told them to start in the Bluhill Road area and work their way up that street ascertaining whether any animals they observed were properly licensed and vaccinated.

Captain Fryer coordinated the Bluhill Road sweep with DOH, and DOH Code Inspector Stephen Morris was assigned to assist Officers Kuster and Hane. Inspector Morris, who was previously aware of ongoing housing problems in the Bluhill Road area, suggested that they start the sweep at the bottom of Bluhill Road because that was the beginning of the neighborhood and was a "good starting point." (J.A. 301). On May 8, Inspector Morris accompanied Officers Kuster and Hane on the sweep. The officers began at the point suggested by Inspector Morris, and they traveled up Bluhill Road. Officers Kuster and Hane observed each house for evidence of animals, and they went to every house where they saw or heard an animal and attempted to make contact with someone at the house. At houses where an animal was not in compliance with county laws and the owner was present, the officers issued citations. If the owner was not present, the officers left a notice of violation requesting compliance. While Officers Kuster and Hane conducted their inspections, Inspector Morris looked for housing code violations.

As the officers were working their way up Bluhill Road, they observed a dog running loose and a woman catching the dog and returning to a house with it. The woman was Rich, and her dog had gotten away from her as she was trying to chain him on the front stoop. A short time later, Officers Kuster and Hane approached the woman (who they then recognized to be Rich) to inquire about the dog. Rich was outside the house cleaning her car, and another dog was sitting in the car. Officer Kuster asked Rich if the dog in the car was hers, to which she responded: "She's in my car, isn't she?" (J.A. 216). Officer Kuster then asked Rich if the dog had water, and the officers commented in a "sarcastic way" that they may have to take it into custody. (J.A. 220). The officers then asked Rich if the dog was licensed, and she responded that the dog had all of its shots, but she would need some time to get the paperwork because she had several dogs. The officers responded that they would wait. Rich, who felt

threatened by the officers' presence and felt they were wasting their time, went inside the house for a few minutes, returned outside to retrieve her dog, and then went back inside. Rich did not inform the officers about the status of her paperwork and did not have any further contact with them that day.

Based on his observations at Rich's house, Officer Kuster determined that Rich was in violation of the animal control laws, and he wrote her several citations for licensing and vaccination violations and one citation for having a dog-at-large. Because Rich had not come back outside, Officer Kuster left the citations on her doorstep. The officers continued with their sweep and completed that block of Bluhill Road before ending for the day. Subsequently, Officer Kuster and another ASD officer returned to the neighborhood and conducted sweeps on other streets. Inspector Morris also returned to the neighborhood to conduct housing inspections over the next few months.

After the May 8 sweep, Officer Kuster reported his contact with Rich to Captain Fryer and expressed concern that although he had heard dogs barking inside her home, he did not know whether they were licensed or vaccinated. Captain Fryer suggested that Officer Kuster obtain an administrative search warrant to ascertain whether the dogs in Rich's house were licensed and vaccinated. Officer Kuster prepared the warrant application and presented it to a judge who issued the warrant.

On May 11, Officer Hane and three other law enforcement officers executed the search warrant. Rich was present during the search and cooperated with the officers. Rich provided the officers with vaccination information for the dogs, but she did not provide any licensing documentation. Consequently, Officer Hane issued her additional citations for having unlicenced dogs. Rich licensed her dogs several days after the search.

Rich subsequently challenged the citations in court and was acquitted of all but the dog-at-large violation. According to appellees, Rich prevailed on the licensing and vaccination citations because the licensing and vaccination laws only require licensing and vaccination for dogs over a certain age, and the County did not establish the age of the dogs at trial.

## II

Rich asserted three constitutional claims against the County and the officers: (1) they violated her First Amendment right by retaliating against her for criticizing ASD; (2) they violated her Fourth Amendment right by conducting an unreasonable search of her house; and (3) they violated her Fourteenth Amendment right by conspiring to commit, and committing, the First and Fourth Amendment violations. The County and the officers moved for summary judgment on each claim, and the district court granted the motion.[4]

With respect to the First Amendment claim, the district court recognized that the claim has three necessary elements: (1) speech that is protected by the First Amendment, (2) retaliatory action that adversely affected the protected speech, and (3) a causal relationship between the speech and the retaliatory action.[5] The district court held that although Rich established the first element of this claim (*i.e.*, she engaged in protected speech), she failed to establish the other two elements. Specifically, the district court — primarily relying on *ACLU v. Wicomico County*, 999 F.2d 780 (4th Cir. 1993) — held that Rich failed to establish the second element (adverse affect) because the action of the County and the officers "did not have a chilling effect, nor did it impair or deny [Rich's] right to critique the ASD or advocate for animal rights. [Rich] continues to speak out against ASD and continues her animals' rights work." (J.A. 331-32). The district court held that Rich also failed to establish the third element (causal connection) because she did not present evidence to show that she was investigated and given citations because of her speech:

> [T]o the extent that there is a causal connection to be found, it is between Plaintiff's agitation and the police response of

---

[4]The district court did not consider the officers' claim of qualified immunity, and that matter is not before us. In addition, the district court stated that Rich had conceded that because all of the actions taken by the County and the officers may be analyzed under the First and Fourth Amendments, the Fourteenth Amendment claim is "without merit." (J.A. 336). Rich does not challenge that ruling on appeal.

[5]The district court cited *Suarez Corp. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000), for authority on this point.

doing a neighborhood "sweep." The issuance of the citations was caused by Plaintiff's actions on that day. Plaintiff has presented no evidence that the Defendants were seeking or created an opportunity to cite Plaintiff for violations of the animal control laws. They were in the vicinity at Plaintiff's request and did not instigate the series of events which resulted in the citations.

(J.A. 333).

As to the Fourth Amendment claim, the district court noted that an administrative search must comply with Fourth Amendment principles, and that the May 11 search required a warrant that was based on probable cause. The district court held that Officer Kuster had probable cause to seek the warrant to search Rich's house for unvaccinated and unlicensed dogs because of his observations on May 8, which included her failure to supply licensing information when requested and her retreat into her home. The district court also held that the information in the warrant application was truthful, and the warrant was therefore valid. Consequently, the district court held that the execution of the warrant was proper.

Turning to Rich's allegations of a conspiracy against her, the district court stated that although she did not expressly set forth a conspiracy claim in her complaint, it "assumed" that she was bringing a conspiracy claim pursuant to 42 U.S.C. § 1985(3). (J.A. 333).[6] Citing *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995), the district court noted that a plaintiff must plead specific facts showing a meeting of the minds or a joint plan of action to survive a motion to dismiss a § 1985(3) claim, and it held that Rich had failed to allege "facts that tend to show that a joint plan or agreement existed to deprive her of her constitutional rights." (J.A. 334).

---

[6]It is not clear why the district court treated the conspiracy claim as a § 1985(3) claim since the complaint makes no mention of that statute. However, at oral argument, Rich's counsel acknowledged that the conspiracy claim was brought under § 1985.

## III

On appeal, Rich argues that the district court erred in granting summary judgment against her on her First and Fourth Amendment claims because she presented sufficient evidence to establish the necessary elements of those claims. Rich also argues that the district court erred in granting summary judgment on her conspiracy claim because she either adequately pled her claim or should have been granted leave to amend her complaint to do so. Having carefully considered the arguments of counsel (both in their briefs and at oral argument), the record, and the applicable legal principles, we are not persuaded that the district court erred in granting summary judgment against Rich.

Specifically, we do not believe that Rich has presented sufficient evidence to support her claims that she was targeted for selective enforcement of the animal control laws in retaliation for her criticism of ASD or that the officers lacked probable cause to search her house. Instead, it is undisputed that the May 8 sweep (which had a legitimate law enforcement purpose) was done at least partly in response to Rich's request, that the officers observed Rich's dog running loose during the sweep, and that Rich refused to provide information about her dogs to the officers when they requested it. In our view, these facts justified the officers' issuance of citations, the resulting search warrant, and the prosecution of the citations (one of which was found in the County's favor). Moreover, we do not believe that Rich has sufficiently alleged or presented sufficient evidence of a § 1985 (or any other) conspiracy.

We therefore affirm substantially on the reasoning expressed by the district court in its order.

*AFFIRMED*